Amanda F. Benedict, CA Bar No. 200291
LAW OFFICE OF AMANDA F. BENEDICT
7710 Hazard Center Dr., Ste E-104
San Diego, CA 92108
Telephone: (760) 822-1911
Facsimile: (760) 452-7560
amanda@amandabenedict.com

*Counsel for Plaintiff and all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **MICHAEL TRUJILLO,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **JOLLY FARMS, INC.,** a California non-profit corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Trujillo ("Trujillo" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Jolly Farms, Inc. ("Jolly Farms" or "Defendant") to stop Jolly Farms from violating the Telephone Consumer Protection Act by sending unsolicited, autodialed text messages to consumers, including text messages to consumers who asked that the messages stop and who have registered their cell phone numbers on the National Do Not Call

Registry ("DNC") and to otherwise obtain injunctive and monetary relief for all persons injured by Jolly Farms' conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).  By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

3.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

4.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id*.

5.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

## JOLLY FARMS

6.     Jolly Farms runs a marijuana delivery service throughout parts of California.

7.      Part of Jolly Farms's marketing plan includes sending text messages *en masse* to consumers regarding promotions and other incentives that are meant to encourage consumers to place orders from Jolly Farms.

8.      Such text messages are sent using an autodialer without the necessary express written consent.

9.      Plaintiff received a number of unsolicited, autodialed text messages to his cell phone, despite having his phone number registered on the DNC and opting out from receiving more autodialed text messages.

10.     In response to this text message, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Jolly Farms to cease sending unsolicited, autodialed text messages to consumers' cellular telephone numbers, including text messages to phone numbers registered on the DNC, as well as an award of statutory damages to the members of the Class.

## PARTIES

11.     Plaintiff Trujillo is an Apple Valley, San Bernardino, California resident.

12.     Defendant Jolly Farms is a California non-profit corporation with its head office located in Maricopa, Kern County, California. Jolly Farms does business throughout parts of California.

## JURISDICTION AND VENUE

13.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

14.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District, and because the wrongful conduct giving rise to this case was directed from this District.

## COMMON ALLEGATIONS

### Jolly Farms Sends Unsolicited Text Messages Using an Autodialer

15.     In sending the unsolicited text messages at issue, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, and/or to call numbers from pre-loaded lists.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP", the text messages' commercial and generic content, that they were sent without consent, and that many of the texts were sent using a shortcode, which is consistent with the use of an automatic telephone dialing system to send text messages.

16.     When Plaintiff replied "Stop" to shortcode 27367, he received an immediate confirmation that he had opted-out:



17.     Consumers have complained online about Marijuana-related text messages they received from shortcode 27367:

- MUNCHIE MON at Urbn Leaf: Buy any 2 edibles/drinkables Get 1 50% off. Valid for ALL CA & TJ residents medical patients! C10-0000246-LIC Reply CANCEL to optout"[1]

- "I've been receiving texts from this code and it's been pestering hell out of me before I tapped on a link in the most recent message to opt out. There isn't much to describe of this sender but it boils down to it probably being some pharmaceutical promo…"[2]

- "Sending help keyword to this number responds with: Reply STOP to cancel. Msg&data rates may apply."[3]

## PLAINTIFF'S FACTUAL ALLEGATIONS

18.     On May 13, 2005, Plaintiff Trujillo registered his cell phone number on the DNC in order to protect his phone from unwanted telemarketing spam.

19.     Plaintiff uses his cell phone for personal use only. The cell phone number is not associated with a business.

20.     On February 25, 2018 at 10:59 AM, more than 30 days after he registered his cell phone number on the DNC, Plaintiff received an autodialed text message from Defendant on his cell phone from the shortcode 27367.

---

[1] https://usshortcodedirectory.com/directory/short-code-27367/
[2] *Id.*
[3] https://shortcodes.org/uncategorized/27367-short-code/

21.    Plaintiff replied back on that same day, at 11:13 AM with "Stop." He then received an immediate response, confirming that he would not receive any more text messages:



22.    Despite opting out and confirmation that he would not receive any more text messages, Plaintiff received another unsolicited, autodialed text message to his cell phone from Defendant on August 30, 2018 at 3:44 PM, again from shortcode 27367.





23.     Plaintiff then received 2 more unsolicited autodialed text messages to his cell phone on September 5, 2018 from Defendant at 2:16 PM. This text message came in as 2 separate text messages:



24.     Plaintiff also received the following additional unsolicited, autodialed text messages to his cell phone from Defendant using shortcode 27367:





25.     On March 21, 2019 at 10:13 AM, Plaintiff received 2 more unsolicited, autodialed text message to his cell phone from Defendant, this time using phone number 800-336-7196:





26.     At 10:30 AM on March 21, 2019, Defendant sent the exact same 2 autodialed text messages to Plaintiff that it had sent at 10:13 AM on the same day.

27.   On April 19, 2019 at 10:04 AM, Plaintiff received 2 more unsolicited, autodialed text message to his cell phone from Defendant using phone number 800-336-7196:



28.   Many of the autodialed text messages that Plaintiff received mention the phone number 949-357-0662. This number belongs to Defendant:[4]

29.   Plaintiff has never consented to Jolly Farms sending him automated text messages to his cell phone.

30.   The unauthorized text messages that were sent by Jolly Farms, as alleged herein, harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Trujillo's use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

31.   Seeking redress for these injuries, Trujillo, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones, as well as unsolicited text messages to phone numbers registered on the DNC.

---

[4] https://web.archive.org/web/20190203021017/http://jollyfarmsdelivery.com/

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claim

32.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an affiliate acting on behalf of Defendant) placed a text message call, (2) to the person's cellular telephone number, (3) using the same equipment used to text Plaintiff, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to text Plaintiff, or (b) they did not obtain prior express written consent.

**Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) placed a text message call, (2) to the person's cellular telephone, (3) using the same equipment used to text Plaintiff, (4) after the person informed Defendant that s/he no longer wished to receive text messages from Defendant.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an affiliate acting on behalf of Defendant) placed a text message call more than one time on his/her residential telephone number, (2) within any 12-month period, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty

days, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to text Plaintiff, or (b) they did not obtain prior express written consent.

**Stop Text Do Not Call Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one text message sent by or on behalf of Defendant within a 12-month period; and (3) who requested that Defendant not text them again (4) and received at least two additional text messages from Defendant more than thirty (30) days after requesting for the text messages to stop.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an affiliate acting on behalf of Defendant) placed a text message call more than one time on his/her residential telephone number, (2) within any 12-month period, (3) for the purpose of selling Defendant's products and services.

33.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the

legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

34. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Classes;

    (b) whether Plaintiff and members of the Classes consented to receiving text messages from Defendant sent using an automatic telephone dialing system;

    (c) whether Defendant sent more than one text message to Plaintiff and members of the Class who registered their phone numbers on the DNC;

    (d) whether Defendant continued to sent text messages to Plaintiff and member of the Class despite being told not to;

    (e) whether Defendant's conduct constitutes a violation of the TCPA; and

    (f) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

36.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

37.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

///

///

///

///

///

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act

### (Violations of 47 U.S.C. § 227)

### (On Behalf of Plaintiff and the Autodialed No Consent Class)

38.     Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference.

39.     Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

40.     These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Class to receive such solicitation text messages.

41.     Defendant's conduct was negligent, wilful, or knowing.

42.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to between $500 and $1,500 for each and every text message.

## SECOND CAUSE OF ACTION

### Telephone Consumer Protection Act

### (Violation of 47 U.S.C. § 227)

### (On Behalf of Plaintiff and the Autodialed Stop Class)

43.     Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference.

44.     Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class after being told to stop texting.

45.     These solicitation text messages were sent *en masse*.

46.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed Stop Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### THIRD CAUSE OF ACTION

**Telephone Consumer Protection Act**

**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

47.     Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

48.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[5]

50.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

---

[5] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

51.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

52.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

53.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

54.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

///

///

///

///

///

## **FOURTH CAUSE OF ACTION**

### **Violation of 47 U.S.C. § 227**

### **(On behalf of Plaintiff and the Stop Text Do Not Call Class)**

55.     Plaintiff incorporates and re-alleges by reference paragraphs 37 as if fully set forth herein.

56.     Defendant violated 47 C.F.R. §64.1200 by initiating calls/texts for telemarketing purposes to telephone subscribers such as Plaintiff and the Stop Text Do Not Call Class who were registered on the National Do Not Call Registry and who specifically told Defendant to stop calling or texting them, and who received two more calls or text messages within a 12-month period from Defendant at least thirty (30) days after informing Defendant to stop calling them. Defendant made these calls without instituting procedures that comply with the minimum regulatory standards for maintaining a list of persons who request not to receive telemarketing calls from them or training its personnel in the existence and use of any such list.

57.     As a result of Defendant's unlawful conduct, Plaintiff and the Stop Text Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the Stop Text Do Not Call Class is each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

58.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Text Do Not Call Class.

///

///

///

///

## FIFTH CAUSE OF ACTION

### Violation of 47 U.S.C. § 227

### (On behalf of Plaintiff and the Internal Do Not Call Class)

59.     Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference.

60.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a

party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

61.     Defendant sent marketing text messages to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

62.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

63.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Trujillo, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above, and appointing Plaintiff as the representative of the Class and his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

///

///

1
2
3 **JURY TRIAL DEMAND**
4    Plaintiff Trujillo requests a jury trial.
5                              Respectfully Submitted,
6                              **MICHAEL TRUJILLO**, individually and
                              on behalf of those similarly situated
7                              individuals
8
Dated: February 5, 2020        /s/ *Amanda Benedict*
9                              Amanda Benedict
10                             Law Office of Amanda Benedict
                             7710 Hazard Center Drive, Ste E104
11                             San Diego, CA 92108
                             Telephone: (760) 822-1911
12                             amanda@amandabenedict.com
13
14                             Steven L. Woodrow*
                             swoodrow@woodrowpeluso.com
15                             Patrick H. Peluso*
                             ppeluso@woodrowpeluso.com
16                             3900 E Mexico Ave., Suite 300
17                             Denver, CO 80210
                             Tel: 720-213-0675
18
19                             *Attorneys for Plaintiff and the alleged
20                             Classes*
21                             *Pro Hac Vice motion forthcoming*
22
23
24
25
26
27
28